AO 91 (Rev. 11/11) Criminal Complaint                AUSA Abigail L. Peluso (312) 353-5342

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

UNITED STATES OF AMERICA

v.

OLA SAYED and
OMRAN ISMAIL

CASE NUMBER:

MAY - 9 2016
5-9-16
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

16 CR 304

MAGISTRATE JUDGE GILBERT.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

In or about November 2013, and continuing through in or about December 2013, in the Northern District of Illinois, Eastern Division, the defendants did conspire with each other to commit an offense against the United States, namely:

(a)    to acquire a firearm from a licensed dealer and knowingly make a false and fictitious oral or written statement intended and likely to deceive such dealer with respect to any fact material to the lawfulness of the sale or other disposition of such firearm, in violation of Title 18, United States Code, Section 922(a)(6); and

(b)    to knowingly and willfully deliver and cause to be delivered to a common carrier for transportation and shipment in interstate and foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, a package or container in which there was a firearm without written notice to the carrier that such a firearm was being transported and shipped, in violation of Title 18, United States Code, Section 922(e).

All in violation of Title 18, United States Code, Section 371.

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

DANIEL NUGENT
Special Agent, Homeland Security Investigations
(HSI)

Sworn to before me and signed in my presence.

Date: May 9, 2016

_Judge's signature_

City and state: Chicago, Illinois

JEFFREY T. GILBERT, U.S. Magistrate Judge
_Printed name and Title_

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

ss

## AFFIDAVIT

I, DANIEL NUGENT, being duly sworn, state as follows:

1.      I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, and have been so employed for approximately seven years. My current responsibilities include the investigation of the smuggling of goods in or out of the United States, including firearms.

2.      This affidavit is submitted in support of a criminal complaint and application for a warrant to arrest OMRAN ISMAIL and OLA SAYED for conspiring to commit an offense against the United States, in violation of Title 18, United States Code, Section 371. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SAYED and ISMAIL with conspiracy, in violation of 18 U.S.C. § 371, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, interviews of witnesses, and records obtained from multiple sources, including telephone companies.

## PURCHASE OF FOUR FIREARMS BY ISMAIL

4.      On or about November 18, 2013, ISMAIL purchased four Smith & Wesson, 9mm handguns from an authorized gun dealer located in Tinley Park, Illinois. I have reviewed the purchase records, including the ATF Form 4473 completed by ISMAIL at the time of purchase.

5.      Based on consensual interviews of the defendants, ISMAIL and SAYED, and as described further below, as well as an interview with an employee of the gun dealer[1] who was present at the time of the purchase of the four firearms ("Individual A"), I believe that ISMAIL and SAYED were together when ISMAIL purchased the four firearms. Specifically, during the interviews, both ISMAIL and SAYED admitted that they were both present for the purchase. Individual A identified photos of both ISMAIL and SAYED as the individuals who were present and Individual A recalls ISMAIL claiming that SAYED was his wife.[2]

6.      Federal law required that upon the purchase and transfer of a firearm from a licensed dealer to an individual, the transferee/buyer of that firearm truthfully complete an ATF Form 4473. ATF Form 4473 records information concerning the transfer of the firearm from a licensed firearm dealer to another individual, including but not limited to the name, age, and place of residence of the

---

[1] A search in the law enforcement databases NCIC and LEADS revealed that Individual A has numerous arrests in Illinois and a conviction in Florida for larceny. The employee received a term of three-years' probation as a result of the larceny charge. This conviction was entered in 1993. The information provided by this employee has been corroborated by other sources, including a review of records and the interviews of both SAYED and ISMAIL.

[2] ISMAIL and SAYED are each married, but not to each other.

buyer.   In or around November 2013, the ATF Form 4473 also recorded the following information:

a.      ATF Form 4473 at Question 11.a. asked the purchaser whether he was the actual buyer of the firearm, and stated: "Warning:  You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you."

b.      Upon completing ATF Form 4473, the transferee/buyer of the firearm was required to sign the form, certifying that the information on the form was true and correct.  In so doing, the purchaser certified, in part, as follows:

i.      "I certify that my answers to Section A are true, correct, and complete.   I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473."

ii.      "I understand that answering 'yes' to Question 11.a. if I am not the actual buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

iii.      "I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

7.     When ISMAIL purchased the four firearms on or about November 18, 2013, he completed an ATF Form 4473.[3] When he completed this form, he indicated in response to question 11.a., that he was the actual transferee/buyer of the four firearms listed on the form.  He further certified that his answers to the questions in Section A (including question 11.a.) were "true, correct, and complete."

8.     On or about November 23, 2013, ISMAIL returned to the gun store to pick up his previously purchased firearms.   Based upon interviews of the defendants, ISMAIL and SAYED, and interviews of Individual A, I believe that SAYED was present with ISMAIL when ISMAIL picked up the four firearms. Specifically, during their respective interviews, ISMAIL and SAYED admitted that they were both present when ISMAIL received the firearms from the store.

9.     On or about December 23, 2013, ISMAIL was interviewed by law enforcement officers, including myself.  ISMAIL was advised of his *Miranda* rights, he stated that he fully understood his rights, he signed a written waiver of his rights, and agreed to make statements to investigators.  At that interview, ISMAIL stated that after purchasing the four firearms, he immediately transferred the firearms to SAYED for safe keeping.  ISMAIL explained that his wife was not comfortable with him having firearms in their home.  ISMAIL was interviewed a second time on or around January 9, 2014.  At this interview, ISMAIL was provided with *Miranda* rights, and after waiving those rights, ISMAIL reviewed a written

---

[3] Not only does the Form 4473 contain ISMAIL's signature, but Individual A identified a photograph of ISMAIL as the person who completed the form.  Further, in a consensual interview, ISMAIL admitted that he completed and signed the form.

statement that was prepared by a law enforcement officer summarizing some of the information provided by ISMAIL. ISMAIL signed this statement. In the statement, ISMAIL stated that he told SAYED that his wife would "freak out if [he] brought guns home" and he asked SAYED to take the guns to her house. He said that he gave SAYED the firearms when they were inside the store.

10.    When ISMAIL was interviewed on or about December 23, 2013, he was asked why he bought four firearms of the same make and caliber. In response, ISMAIL stated, in part, that he bought the four guns because it was his constitutional right and he wanted them for his house. ISMAIL was interviewed a second time on or about January 9, 2014. At this interview, ISMAIL stated, in part, that he got "carried away" with the fact that he had a FOID card and could purchase firearms. He explained that he purchased four 9mm guns because he wanted one for his office, one for his home, and one to carry after he received his concealed carry permit.

11.    On or about December 23, 2013, SAYED was interviewed by law enforcement officers, including myself. SAYED was advised of her *Miranda* rights, she stated that she fully understood her rights, she signed a written waiver of her rights, and agreed to make statements to investigators. At this interview, SAYED stated that she was with ISMAIL when he purchased the four handguns, and that ISMAIL had a work appointment shortly after they picked up the guns, and that she took possession of the firearms because ISMAIL did not have time to bring his guns home.

12.     On or about January 8, 2014, SAYED was interviewed a second time by law enforcement officers, including myself. SAYED was advised of her *Miranda* rights, she stated that she fully understood her rights, and she signed a written waiver of her rights. SAYED agreed to make statements to investigators, and she also reviewed a written statement prepared by a law enforcement officer summarizing some of the information provided by SAYED. SAYED signed this written statement. At this interview, SAYED again stated that she immediately took possession of ISMAIL's four guns the day that they picked the firearms up from the gun dealer.

### PURCHASE OF TWO FIREARMS BY SAYED

13.     I have reviewed copies of purchase orders documenting firearms purchased by OLA SAYED. I have reviewed records of firearm purchases made by SAYED on or about November 30, 2013, and December 7, 2013.

14.     According to a review of the purchase records, including ATF Form 4473, on or about November 30, 2013, SAYED purchased a Smith & Wesson 9mm handgun from a gun dealer in Tinley Park, Illinois. This dealer is the same dealer from which ISMAIL purchased the four firearms listed above. Based upon the interview of SAYED conducted on January 8, 2014, I believe that ISMAIL was present when Sayed purchased this firearm.[4]

---

[4] I have reviewed the purchase orders and ATF Form 4473s completed by SAYED at the time of purchase, which indicate the serial number of the firearms that were purchased by SAYED. At the January 8, 2014 interview, SAYED stated that ISMAIL was with her when she purchased the firearms bearing those two serial numbers, but she stated that the firearms were purchased in October 2013. Based upon my review of the records from the

6

15.     According to a review of the purchase records, including ATF Form 4473, on or about December 7, 2013, SAYED returned to the same gun dealer in Tinley Park, Illinois, and picked up the firearm that was purchased on or about November 30, 2013.    According to these records, on this same date, SAYED purchased a Glock 9mm handgun from the same gun dealer in Tinley Park, Illinois. As described above, based upon the January 8, 2014, interview with SAYED, I believe that ISMAIL was present when Sayed picked up the firearm that was previously purchased in or around November 2013.

16.     On or about December 16, 2013, SAYED returned to the same gun dealer in Tinley Park, Illinois, and picked up the firearm that was purchased on or about December 7, 2013.

## DISCOVERY OF FIREARMS IN LUGGAGE

17.     On or about December 23, 2013, SAYED arrived at O'Hare International Airport to board British Airways Flight 296, headed to London, England with a final destination to Cairo, Egypt.

18.     I have reviewed surveillance footage from December 23, 2013, documenting the area around the ticket counter, which captures SAYED waiting to check-in to her flight.    SAYED is accompanied at the airport by her minor-aged daughter and her husband.

19.     Based upon my review of the video surveillance, SAYED had several pieces of luggage with her while standing in the ticket line.    Further, I interviewed

---

firearm store, I believe the firearms were actually purchased on November 30, 2013, and December 7, 2013, and not in October 2013.

an officer with the United States Customs and Border Protection ("CBP") who informed me that at least two pieces of luggage in SAYED's name were checked onto British Airways Flight 296, and searched at O'Hare on or about December 23, 2013, as described more fully below. SAYED did not declare to the airline that she was traveling with firearms or ammunition or that she had such items contained within her luggage.

20.     I was informed by the CBP officer that after SAYED checked her luggage, the Transportation Security Administration ("TSA") at O'Hare International Airport x-rayed the luggage. At that time, a TSA officer observed what appeared to him to be a firearm contained within the luggage. Following this, SAYED's luggage was segregated for a physical search.

21.     On or about December 23, 2013, TSA officers at O'Hare International Airport conducted an initial search of SAYED's luggage, and found six firearms contained within SAYED's luggage. The search of SAYED's luggage was captured on surveillance footage that I have reviewed. The footage reveals that the six firearms were wrapped inside of blankets that were rolled inside of SAYED's luggage and secured with some sort of band. Following TSA's search of SAYED's luggage, TSA contacted the Chicago Police Department.

22.     When the Chicago Police Department officers arrived, they continued the search of SAYED's luggage. The officers discovered six 9mm handguns, four boxes of ammunition, 13 handgun magazines including an extended clip magazine,

seven handgun grips, and a Glock-brand "fast loader" (a device that I know to be capable of loading bullets into a magazine more quickly than a manual load).

23.     The six 9mm handguns that were discovered in SAYED's luggage on or around December 23, 2013, match the serial numbers of the four guns that were purchased by ISMAIL in or around November 2013 and referenced above, and the two 9mm guns that were purchased by SAYED in or around November 2013 and December 2013 and referenced above.

24.     When the firearms and ammunition were discovered in SAYED's luggage, SAYED was paged by airline personnel. A review of SAYED's phone records indicate that SAYED made several calls to ISMAIL on the evening of December 23, 2013. At his interview on or about December 23, 2013, ISMAIL stated that SAYED called him to inform him that the police had located the firearms in her luggage.

25.     After the discovery of the firearms in SAYED's luggage, on or about December 23, 2013, ISMAIL arrived at O'Hare International Airport.

26.     At that time, ISMAIL was interviewed by law enforcement officers, including myself, at O'Hare International Airport.[5]  ISMAIL was provided his *Miranda* warnings and agreed to provide statements to investigators. At this interview, ISMAIL explained that he received his FOID card in or around October or November 2013. Shortly after receiving his FOID card, ISMAIL stated that he purchased four, Smith & Wesson, 9mm handguns at a firearms dealer in Tinley

_____

[5] This interview is also referenced above.

Park, Illinois. After purchasing the handguns, ISMAIL stated that he immediately turned the guns over to SAYED for safe keeping because his wife was nervous about guns being in their home. When asked where his guns were currently located, ISMAIL pointed to SAYED's luggage. ISMAIL stated that he learned approximately three weeks prior to his interview that SAYED was thinking about taking a trip to Egypt. Approximately a week after being informed of the trip, ISMAIL stated that SAYED told him that she was thinking about bringing the guns to Egypt, and that he thought she wanted to show the guns off to her family. ISMAIL stated that he spoke with someone at the Egyptian Embassy in Chicago about exporting guns, and that he was told that it would not be a problem to export the guns, but that the embassy worker did not know the proper procedures.

27. On or about December 23, 2013, SAYED was also interviewed at O'Hare International Airport.[6] SAYED was provided with *Miranda* warnings and agreed to provide statements to law enforcement officers, including myself. SAYED explained that she packed the firearms in socks and placed them inside of comforters because she did not want the guns to get scratched and because the carrying cases for the firearms took up too much space in her luggage. SAYED explained that she intended to take the guns to Egypt for safe keeping as her residence in Egypt was equipped with a doorman. She also stated that had she made it to Egypt with the firearms, she would have called ISMAIL for directions on what to do with the four firearms that he purchased.

_____

[6] This interview is also referenced above.

10

28. On or about January 8, 2014, SAYED was interviewed a second time. She was provided her *Miranda* warnings and she waived her right to remain silent and agreed to provide statements to law enforcement officers, including myself. At this interview, SAYED stated that she intended to take the guns to Egypt to show them to her family, including ISMAIL's four firearms. Then, she stated that ISMAIL asked her to call him if she got to Cairo, and that he was going to give her directions on what to do with his four firearms. SAYED stated that she did not know that she was not allowed to take guns out of the country.

29. Recently, ISMAIL's counsel provided the Assistant United States Attorney assigned to this matter a copy of a written agreement purportedly between ISMAIL and SAYED.[7] The agreement states, in part, that ISMAIL provided the four firearms to SAYED to "keep in her house for a short period of time" and that "he will take them back." The agreement also states that SAYED agreed "to take full responsibility of the guns at the time when the guns are in her possession." ISMAIL's counsel also provided a copy of a text message purportedly exchanged between ISMAIL and SAYED. The text message, purportedly from SAYED to ISMAIL, states, in part, "I apologize for all the trouble I caused you in the last 3 years working for you, I should have listened to your advice and kept the guns in my house or at least followed procedures. I am sorry man, I was stupid to take that

---

[7] These records were provided to the government by defense counsel as part of recent conversations and negotiations between defense counsel and counsel for the government. The government does not include reference to these documents as evidence establishing probable cause of the underlying crime as to either SAYED or ISMAIL. Rather, the government discloses this information for the court's consideration as material arguably favorable to ISMAIL.

stuff to the airport. It is my mistake, the luggage were in my position [sic] and it was my responsibility. I know you trusted me to keep your guns at my house. I am sorry."

30. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that OLA SAYED and OMRAN ISMAIL, conspired to commit an offense against the United States, in violation of Title 18, United States Code, Section 371.

FURTHER AFFIANT SAYETH NOT.

Daniel Nugent
Special Agent, Homeland Security Investigations

SUBSCRIBED AND SWORN to before me on May 9, 2016.

JEFFREY T. GILBERT
United States Magistrate Judge

12